UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
Stillwater Liquidating LLC,

                     Plaintiff-Appellant,

            -against-

Net Five at Palm Pointe, LLC; Net Five Holdings LLC;
Planet Five Development Group LLC; Net Five South
Beach LLC; Net Five at Kings Hotel LLC; Net Five at
Hallandale LLC; Boggy Creek Villas, LLC; Net Five
East Lyme, LLC; Net Five-FDA at Islamorada, LLC;
1888 Boggy Creek Road, LLC; Planet Five at Gerova
LLC; Paul Rohan; Eric Halter; Paradigm Credit
Corp.; Saunders Capital LLC; Calhoun Commercial
Construction LLC; Judge Street Realty LLC; SFN
Dekalb Holdings LLC; Memphis Blues Acquisition
Group, LLC; Shreeji Hospitality of Charlotte, LLC;
Redrock Kings, LLC; John R. Daniel, III; Yvette
Daniel; Stephen J. McDonald; Vicki McDonald;
CL RP Stonecrest LLC; 335 Washington Avenue ó
Miami Beach LLC; 347 Washington Avenue ó Miami
Beach LLC; and Alma Bank,

                     Defendant-Appellees.

-------------------------------------------------------------------x

No. 16 Civ. 08883

(Hon. Edgardo Ramos)

Bankruptcy Case No.
12-14140 (MEW)

Adv. Proc. No.
14-02245 (MEW)

## BRIEF OF DEFENDANT-APPELLEE PARADIGM CREDIT CORP.

Brian J. Grieco
McLAUGHLIN & STERN, LLP
1010 Northern Boulevard, Suite 400
Great Neck, New York  11021
(516) 829-6900
bgrieco@mclaughlinstern.com

*Attorneys for Paradigm Credit Corp.*

528862.4

TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................. 5

    A.  The First Paradigm Loan (Secured by the Kings Hotel Loan)  .............. 5

    B.  The Second Paradigm Loan (Secured by the St. Augustine Property) .... 7

PROCEDURAL HISTORY ............................................................................... 9

LEGAL STANDARDS ....................................................................................11

    A.   Appeal Standard........................................................................11

    B.   Pleading Standard on Motions to Dismiss ...........................................12

ARGUMENT....................................................................................................12

POINT I:  PLAINTIFF DOES NOT HAVE STANDING TO ASSERT
CLAIMS AGAINST PARADIGM UNDER SECTION 544 AS
AN ASSIGNEE OF THE DELAWARE FUND OR OTHERWISE......................12

POINT II:  THE PARTICIPATION AGREEMENTS DO NOT GIVE THE
DEBTOR AN INTEREST IN THE DELAWARE FUNDSø ASSETS,
NOR ANY OF ITS SUBSIDIARIESø ASSETS....................................................14

POINT III:  THE SO-CALLED GEROVA TRANSFER WAS
IRRELEVANT TO THE CLAIMS AGAINST PARADIGM ..............................15

POINT IV:  PLAINTIFF HAS NO CLAIM AGAINST PARADIGM
FOR TRANSFERS TO IT AS A SUBSEQUENT TRANSFEREE......................17

POINT V:  PLAINTIFFøS COMMON LAW CLAIMS FOR CONSPIRACY
AND AIDING AND ABETTING FAIL AS AGAINST PARADIGM ................19

    A.   Plaintiff Fails to Allege Actual Knowledge ..........................................19

    B.   The So-Called Red Flags ....................................................................21

    C.   Allegations as to the Scheme ..............................................................24

528862.4

D.   Allegations as to Gerova, Not a Net Five Entity ...................................25

E.   Plaintiff's Case Law is Distinguishable .................................26

F.   Plaintiff's Claims are Barred by the Doctrine of *In Pari Delicto* ...........28

G.   Plaintiff has no Standing to Assert Common Law Claims ...................29

POINT VI:  PLAINTIFF∅S UNJUST ENRICHMENT
AND CONSTRUCTIVE TRUST CLAIMS FAIL .................................31

A.   Unjust Enrichment ...................................................31

B.   Constructive Trust ...................................................31

CONCLUSION ...................................................................32

528862.4

## TABLE OF AUTHORITIES

Page

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................12, 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................12

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
490 F. Supp. 2d 536 (S.D.N.Y. 2007) .........................................19, 20

*Filler v. Hanvit Bank*,
339 F. Supp. 2d 553 (S.D.N.Y. 2004),
*aff'd*, 156 F. App'x 413 (2d Cir. 2005) ...........................................20

*In re Ames Dep't Stores, Inc.*,
582 F.3d 422 (2d Cir. 2009) ............................................................11

*In re General Media, Inc.*,
335 B.R. 66 (Bankr. S.D.N.Y. 2005)...........................................13, 30

*In re Monahan Ford Corp. of Flushing*,
340 B.R. 1, 35 (Bankr. E.D.N.Y. 2006) .....................................26, 27

*In re Quigley Co., Inc.*,
449 B.R. 196 (S.D.N.Y. 2011) .........................................................11

*In re Residential Capital, LLC*,
527 B.R. 865 (S.D.N.Y. 2014) .........................................................30

*JP Morgan Chase Bank v. Winnick*,
406 F. Supp. 2d 247 (S.D.N.Y. 2005) ..............................................20

*Kashi v. Gratsos*,
790 F.2d 1050 (2d Cir. 1986)...........................................................20

*Kirschner v. KPMG LLP*,
15 N.Y.3d 446 (2010) ................................................................28, 29

*Kolbeck v. LIT Am., Inc.*,
939 F. Supp. 240 (S.D.N.Y. 1996) .............................................20, 21

*Kottler v. Deutsche Bank AG,*
   607 F. Supp. 2d 447 (S.D.N.Y. 2009) ......................................................26, 27

*Mandarin Trading Ltd. v. Wildenstein,*
   16 N.Y.3d 173 (2011) ...................................................................................31

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP,*
   57 F. Supp. 3d 206 (S.D.N.Y. 2014) ................................................................28

*Minpeco, S.A. v. ContiCommodity Servs., Inc.,*
   552 F. Supp. 327 (S.D.N.Y. 1982) ..................................................................27

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman,*
   277 B.R. 20 (S.D.N.Y. 2002) .........................................................................13

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.,*
   446 F. Supp. 2d 163 (S.D.N.Y. 2006) .............................................................20

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.,*
   652 F. Supp. 2d 495 (S.D.N.Y. 2009) .............................................................19

*Picard v. JPMorgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC),*
   721 F.3d 54 (2d Cir. 2013)...........................................................................29

*Rosner v. Bank of China,*
   2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008),
   *aff'd*, 349 F. App'x 637 (2d Cir. 2009) .....................................................20, 21

*S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC,*
   516 B.R. 18 (S.D.N.Y. 2014) ..................................................................18, 19

## PRELIMINARY STATEMENT

Notwithstanding being granted two opportunities to amend its complaint to cure obvious deficiencies, the lower court dismissed all claims asserted by plaintiff-appellant Stillwater Liquidating LLC ("Plaintiff") against, among others, defendant-appellee Paradigm Credit Corp. ("Paradigm"). Plaintiff now appeals that decision. For the reasons discussed below, the lower court's decision should be affirmed.

This appeal centers on one discrete issue – that the transfers sought to be avoided involve non-debtor Stillwater Asset Backed Fund, LP (the "Delaware Fund"), *not* Stillwater Asset Backed Offshore Fund Ltd. (the "Debtor"), the only entity that was a chapter 11 debtor. The principal brief of Plaintiff ("Appellant Brief") attempts to cloud this issue, but, at bottom, this adversary proceeding is an attempt by Plaintiff to assert fraudulent conveyance claims of creditors of the Delaware Fund (and its non-debtor subsidiaries), *not* of the Debtor. Plaintiff cannot assert such claims. This issue permeates all of Plaintiff's arguments, which necessarily fail.

Plaintiff's claims against Paradigm involve two separate loans made by Paradigm that have since been repaid. The First Paradigm Loan (defined below) was secured by a separate mortgage loan (the "Kings Hotel Loan"). That

underlying mortgage loan that served as collateral was made initially by the Delaware Fund to a third party borrower, which granted the Delaware Fund a mortgage on its real property.  Paradigm held a security interest in the loan and mortgage, not the real property itself.  The Second Paradigm Loan (defined below) was secured by a mortgage on real property owned originally by a subsidiary of the Delaware Fund (the "St. Augustine Property").  The Delaware Fund's subsidiary obtained the property free and clear in an unrelated bankruptcy sale.  The Second Paradigm Loan proceeds were used by a borrower to purchase the St. Augustine Property from the Delaware Fund's subsidiary.

Section 544 ("Section 544") of title 11 of the United States Code (the "Bankruptcy Code"), the provision relied on by Plaintiff to assert its fraudulent conveyance claims, permits a trustee to assert *only* claims of a creditor of a *debtor* based on the *debtor's* pre-petition transfer of property.  Here, there is no transfer of a debtor's property and, at most, Plaintiff was the assignee of claims of non-debtors (*e.g.*, the Delaware Fund).  Section 544 does not allow Plaintiff to assert claims of a non-debtor's creditors, regardless of whether Plaintiff has the contractual right to prosecute claims on the non-debtor's behalf.  Each of Plaintiff's arguments sought an end run around this result (*e.g.,* that there was substantive consolidation of the Delaware Fund and the Debtor or that they were

2

alter egos).  (Appellant Brief, pp. 13-16.)  Each was rejected properly by the lower court.

Plaintiff attempts to use the Debtor's participation interest in several of the Delaware Fund's loans to create a Section 544 right.  (Appellant Brief, pp. 16-21.)  However, the participation agreements did not give the Debtor an ownership interest in the Delaware Fund's assets that were used as collateral for Paradigm's loans at the time the loans were made.  If anything, the Debtor may have had a beneficial interest in a loan, which does not confer standing to assert claims against transferees.  Moreover, with respect to one of the Paradigm loans, the Delaware Fund was never the owner of the underlying loan at issue *and* that loan was extinguished prior to the Delaware Fund's entry into the applicable participation agreement, thus, there was no participation in that loan.

Plaintiff goes to great lengths to argue that the Delaware Fund's assets were looted as part of the so-called Gerova Transfer, the alleged transfer by the *Funds* to *Gerova*.[1]  Plaintiff believes the so-called "Gerova Transfer" tainted all future transfers, including transfers to Net Five Holdings LLC ("NFH") or its affiliates,

---

[1] Plaintiff uses the vague definition of *Gerova* throughout this proceeding.  For example, Plaintiff first defined "Gerova" to include Gerova Financial Group, Ltd. ("GFG") and Gerova Holdings Ltd. (A. 1918, ¶ 1), but now defines Gerova loosely as  "Gerova Financial Group" (presumably, GFG) and its affiliates and subsidiaries (Appellant Brief, p. 1).

3

and relies on conclusory statements in the First Amended Complaint (the "FAC")
on this point.  However, the record is clear that the Delaware Fund and its
subsidiary, which were, at least at one point, the owners of the collateral secured
by Paradigm's loans, were not part of this alleged asset transfer to Gerova.
Instead, the Delaware Fund was the surviving entity upon its merger with both
Stillwater Asset Backed Fund II, LP ("SABF II") and Gerova AB Fund Mergerco
LP ("Gerova AB").  As the surviving entity, the Delaware Fund could not have
been left an empty shell after the merger (as alleged by Plaintiff) – it retained its
ownership of its assets, including its ownership in any of its subsidiaries.

Further, even if Plaintiff did have standing to attack transfers to Paradigm,
Plaintiff does not articulate what *transfers* it seeks to avoid.  Here, Paradigm's
loans were repaid and the related security interests released.  In addition, many of
the alleged "red flags" that Plaintiff contends put parties on notice of fraud
occurred subsequent to the funding of Paradigm's loans.  Plaintiff also fails to meet
its burden of showing a lack of good faith.

Plaintiff asserts common law claims against Paradigm for conspiracy to
defraud and convert, and for aiding and abetting conversion and breach of
fiduciary duty.  (A. 2028-30, 2032-33.)  Each of these claims is based on Plaintiff's
conclusory allegations that Paradigm provided funding to "grease" the alleged

528862.4

scheme to strip the Funds' assets and remove them from the reach of the Funds'

creditors.  (A. 2029-33, ¶¶ 463, 468, 484.)  Each of these claims requires

allegations that Paradigm had *actual* knowledge of the scheme.  Plaintiff failed

woefully to allege *actual* knowledge – *i.e.*, its allegations are either conclusory or

do not plausibly suggest Paradigm had actual knowledge.  For example, Plaintiff

alleges repeatedly that Paradigm should have known of the scheme because of "red

flags" – an allegation that seeks to show constructive knowledge, not actual

knowledge – and those allegations even fail to show constructive knowledge.

Plaintiff also does not allege that Paradigm knew of any involvement by NFH or

any of its affiliated entities.  Dismissal of these common law claims should,

therefore, be affirmed.

Lastly, the lower court dismissed correctly Plaintiff's claims for unjust

enrichment and constructive trust.

## FACTUAL BACKGROUND[2]

A.    The First Paradigm Loan (Secured by the Kings Hotel Loan)

On March 22, 2006, the Delaware Fund made the Kings Hotel Loan to

Kings Hotel, Inc. ("KHI") and, as security for the Kings Hotel Loan, KHI granted

---

[2] For the sake of brevity, only relevant facts are repeated here.  Unless otherwise
noted, all of the facts below are as alleged by Plaintiff in the FAC.

the Delaware Fund a mortgage (the "Kings Hotel Mortgage") on certain property

in Brooklyn, New York (the "Kings Hotel Property").  (A. 1988, ¶ 266.)

The Delaware Fund and the Debtor entered into master loan participation

agreements (collectively, the "MLPA") with respect to certain loans pursuant to

which the Debtor allegedly purchased a participation interest in such loans.  (A.

1988, ¶ 267.)  The MLPA allegedly with respect to the Kings Hotel Loan was

dated January 1, 2008.[3]  (A. 1988, ¶ 267.)

 In the FAC, Plaintiff alleges incorrectly that on January 20, 2010, the Kings

Hotel Mortgage and the Debtor's participation interest was transferred to Gerova[4]

"and/or converted by Gerova pursuant to the Gerova Transfer." (A. 1989, ¶ 269.)

By assignment dated June 23, 2010, and recorded on June 29, 2010, the

*Delaware Fund* transferred the Kings Hotel Mortgage to NFH.  (A. 2255;

Decision, p. 69.)  Plaintiff alleges in the FAC that the transfer took place on May

26, 2010, but that Gerova transferred it to NFH pursuant to an operating

agreement.  (A. 1989, ¶ 270.)

---

[3] Each of the MLPAs filed by Plaintiff with the lower court are substantially similar, only one of which was included in the Appendix (A. 1297-1310).  The MLPA allegedly with respect to the Kings Hotel Loan can be found at 131-11 on the lower court's docket.

[4] The FAC does not refer to which Gerova entity was the transferee.

In July 2010, the Kings Hotel Loan and the Kings Hotel Mortgage were assigned to Sawtooth Capital, LLC ("Sawtooth") to secure a $500,000 loan.  (A. 1989, ¶ 271.)  Later that month, the Kings Hotel Loan and the Kings Hotel Mortgage were assigned back to NFH.  (A. 1989, ¶ 271.)

On August 4, 2010, NFH assigned the Kings Hotel Loan and the Kings Hotel Mortgage to Net Five at Kings Hotel, LLC, a New York limited liability company ("NFKH").  (A. 1989, ¶ 271.)

On August 5, 2010, Paradigm made a $3,300,000 loan (the "First Paradigm Loan") to NFKH and, as security for the First Paradigm Loan, NFKH granted Paradigm, among other things, a *security interest* in the Kings Hotel Loan and the Kings Hotel Mortgage.  (A. 1989, ¶ 271.)

Approximately one year later, in August 2011, the First Paradigm Loan was repaid.  (A. 1992, ¶¶ 281-82.)

B.      The Second Paradigm Loan (Secured by the St. Augustine Property)

In November 2005, St. Augustine Hotel, LLC ("SAH") purchased the St. Augustine Property (property located in Miami Beach, Florida) with funds from a loan (the "JPS-AUG Loan") made by AUG Funding, LLC ("AUG").  (A. 1969, ¶¶

176-77.)  As security for the JPS-AUG Loan, AUG was granted a first mortgage on the St. Augustine Property.  (A. 1969, ¶ 177.)

AUG is a subsidiary of JPS Loan Holdings I, LLC ("JPS").  (A. 1969, ¶ 176.)  JPS is a subsidiary of the Delaware Fund.  (A. 1969, ¶ 176.)

The Delaware Fund and the Debtor entered into a MLPA with respect to the JPS-AUG Loan.  (A. 1970, ¶¶ 180-82.)  The MLPA allegedly with respect to the JPS-AUG Loan was dated July 1, 2009.  (A. 1297.)

SAH defaulted on the JPS-AUG Loan and commenced a chapter 11 case, and, in May 2007, AUG obtained title to the St. Augustine Property at a bankruptcy sale in SAH's chapter 11 case pursuant to section 363 of the Bankruptcy Code (the "Section 363 Sale").[5]  (A. 1969, ¶ 178.)

On May 7, 2008, AUG borrowed funds from Stonegate Bank, secured by the St. Augustine Property, and Stonegate Bank later assigned the loan to EWE Loan No. 4 LLC ("EWE").  (A. 1969-70, ¶¶ 179, 184-85.)

---

[5] The JPS-AUG Loan was extinguished as part of the Section 363 Sale; however, Plaintiff alleges that on July 1, 2009 (more than two years later), it took a participation interest in that loan.  The Lower Court discusses this discrepancy at length.  (A. 2257-58; Decision, pp. 71-72.)  A copy of the sale order in SAH's chapter 11 case relied on by the Lower Court can be found at 189-45 on the lower court's docket.

In the FAC, Plaintiff alleges incorrectly[6] that (a) on January 20, 2010, the St. Augustine Property and the Debtor's participation interest was transferred to Gerova "and/or converted by Gerova pursuant to the Gerova Transfer" (A. 1970, ¶ 182), and (b) on May 26, 2010, the St. Augustine Property and the Debtor's participation interest was assigned to NFH pursuant to an operating agreement (A. 1970, ¶ 183).

On December 20, 2011, AUG sold the St. Augustine Property to Net Five at South Beach, LLC, a Florida limited liability company ("NFSB").  (A. 1971, ¶ 188.)  That same day, NFSB borrowed $2,700,000 from Paradigm (the "Second Paradigm Loan") and, as security for the loan, NFSB granted Paradigm, among other things, a mortgage on the St. Augustine Property.  (A. 1971, ¶ 190.)

The Second Paradigm Loan was repaid in March 2013.  (A. 1972, ¶¶ 194, 198.)

## PROCEDURAL HISTORY

On January 17, 2013, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or the "Lower Court") entered an

---

[6] These allegations are contradicted by allegations in the following paragraph – that the St. Augustine Property was sold by AUG.

order for relief in the Debtor's chapter 11 case, which was filed on October 3, 2012, under Case No. 12-14140.[7]  (A. 1927, ¶ 20, 1953, ¶ 125.)

On October 2, 2014, Plaintiff commenced this adversary proceeding in the Bankruptcy Court by filing its complaint (the "Original Complaint").  (A. 215-95.)  On March 30, 2015, Paradigm (and other defendants in the action) moved to dismiss Plaintiff's claims.  (A. 443, 644, 651, 658-682, 686, 690, 697, 703, 709, 1139-45.)

On May 15, 2015, at the Bankruptcy Court's request and while the motions to dismiss were pending, Plaintiff filed an extensive supplement to the Original Complaint (the "Supplement").  (A. 781-814.)

Almost a year later, on April 22, 2016, Plaintiff filed the FAC after moving the Bankruptcy Court for permission to do so.  (A. 1917-2040.)  Through the FAC, Plaintiff asserts 16 separate causes of action against the defendants.  (A. 2017-38.)  However, the FAC includes only the following claims against Paradigm:  (i) Recovery of Subsequent Transfers under 11 U.S.C. § 544(b) and N.Y. D.C.L. §§ 278, 279 (Count V); (ii) Conspiracy to Defraud and Convert Property (Count VIII); (iii) Aiding and Abetting Conversion (Count IX); (iv) Aiding and Abetting Breach

---

[7] On August 24, 2012, GFG and Gerova Holdings Ltd. commenced a chapter 15 case in the Bankruptcy Court.  (A. 1928, ¶ 24.)

of Fiduciary Duty (Count XI); (v) Unjust Enrichment (Count XIV); (vi)

Constructive Trust (Count XV); and (vii) Accounting (Count XVI).

On September 2, 2016, notwithstanding Plaintiff's three attempts to assert

valid claims against Paradigm (*i.e.,* the Original Complaint, the Supplement, and

the FAC), the Bankruptcy Court dismissed the FAC as against Paradigm and

certain other defendants (the "Decision").  (A. 2187-292.)  On October 26, 2016,

the Bankruptcy Court entered an Order dismissing Plaintiff's claims (the "Order").

(A. 3896-3901.)  That same day, judgment was entered (the "Judgment").  (A.

3902-03.)

## LEGAL STANDARDS

### A.   Appeal Standard

In reviewing a bankruptcy court judgment as an appellate court, the district

court reviews the bankruptcy court's (a) findings of fact under a clearly erroneous

standard and (b) conclusions of law *de novo*.  *See, e.g., In re Quigley Co., Inc.,* 449

B.R. 196, 200-01 (S.D.N.Y. 2011); *In re Ames Dep't Stores, Inc.*, 582 F.3d 422,

426 (2d Cir. 2009) ("a finding is 'clearly erroneous' when [the reviewing court] is

left with the definite and firm conviction that a mistake has been made").

11

B.   Pleading Standard on Motions to Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff, but the court is not bound to accept as true legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 557).  If there are insufficient factual allegations to raise a right to relief above the speculative level, the complaint must be dismissed.  *See Twombly*, 550 U.S. at 555.  As the Lower Court concluded, Plaintiff fails to meet this standard.

ARGUMENT

POINT I

PLAINTIFF DOES NOT HAVE STANDING TO ASSERT CLAIMS
AGAINST PARADIGM UNDER SECTION 544
AS AN ASSIGNEE OF THE DELAWARE FUND OR OTHERWISE

Paradigm hereby incorporates by reference and requests that this Court consider the argument set forth by defendant-appellees John R. Daniel, III, Yvette

12

Daniel, Stephen J. McDonald, and Vicki McDonald (collectively, the "Daniels and McDonalds") in <u>Point I</u> of their brief in response to the Appellant Brief, dated February 17, 2017 (the "Daniels/McDonalds Brief").[8]

Further, to the extent Paradigm was granted a security interest in collateral related to a direct or indirect subsidiary of the Delaware Fund (*e.g.*, AUG), it does not change the analysis as neither the Delaware Fund or its subsidiaries were debtors.  Therefore, Section 544 is unavailable and Plaintiff has no standing.

The bottom line is Section 544 does not permit a trustee (or Plaintiff) to assert claims of a non-debtor's creditors.[9]  *See, e.g., Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 29 (S.D.N.Y. 2002) (under Section 544, a "trustee succeeds to the rights of an allowed unsecured creditor [of the debtor] in existence at the commencement of the case who can avoid the transfer or obligation under applicable state or local law").

---

[8] Paradigm seeks to join in these arguments as Paradigm and the Daniels and McDonalds are represented by the same attorneys in this proceeding.  It should be noted, however, that besides being represented by the same attorneys, there is no other affiliation or relationship between Paradigm and the Daniels and McDonalds.

[9] To the extent Plaintiff believes it has separate claims under the New York Debtor and Creditor Law ("NYDCL") absent Section 544, it is wrong.  The Bankruptcy Court does not have jurisdiction to entertain these claims under the NYDCL without application of Section 544.  *See, e.g., In re General Media, Inc.*, 335 B.R. 66, 75 (Bankr. S.D.N.Y. 2005) (court did not have jurisdiction to hear a post-confirmation non-debtor dispute simply because it might conceivably increase the recovery to creditors).

13

POINT II

THE PARTICIPATION AGREEMENTS DO NOT GIVE THE
DEBTOR AN INTEREST IN THE DELAWARE FUNDSø ASSETS,
<u>NOR ANY OF ITS SUBSIDIARIESø ASSETS</u>

Paradigm hereby incorporates by reference and requests that this Court

consider the argument set forth by the Daniels and McDonalds in <u>Point II</u> of the

Daniels/McDonalds Brief.  (The MLPA quoted in the Daniels/McDonalds Brief is

the alleged MLPA related to the JPS-AUG Loan [A. 1297-1310] as it was the

MLPA included in the Appendix.  All of the MLPAs at issue are substantially

similar.)

Further, the Debtor acquired no interest at all with respect to the JPS-AUG

Loan.  First, the MPLA related to the JPS-AUG Loan was between the Debtor and

the Delaware Fund.  AUG (the entity that owned the JPS-AUG Loan and

purchased the St. Augustine Property at the Section 363 Sale) was *not a party* to it.

The Delaware Fund could not sell a participation interest in a loan it did not own.

Second, the MLPA allegedly with respect to the JPS-AUG Loan was dated July 1,

2009 (A. 1297), however, the JPS-AUG Loan was extinguished in May 2007,

more than two years earlier, when AUG obtained title to the St. Augustine Property

at the Section 363 Sale.  (A. 1969, ¶ 178; A. 2257-58.)

528862.4

In sum, for the reasons set forth above and in the Daniels/McDonalds Brief, the MLPA does not give Plaintiff standing to assert claims based on any transfer by the Delaware Fund or any of its subsidiaries, including any transfer of the Kings Hotel Loan, the Kings Hotel Mortgage, or the St. Augustine Property.

POINT III

THE SO-CALLED GEROVA TRANSFER WAS IRRELEVANT
TO THE CLAIMS AGAINST PARADIGM

Paradigm hereby incorporates by reference and requests that this Court consider the argument set forth by the Daniels and McDonalds in Point III of the Daniels/McDonalds Brief.

Further, Plaintiff in the FAC contradicts itself in discussing the so-called Gerova Transfer.  For example, in the FAC, Plaintiff alleges that in 2010, the St. Augustine Property was transferred to Gerova as part of the so-called Gerova Transfer and then it was transferred to NFH pursuant to an operating agreement (A. 1970, ¶¶ 182-83).  However, Plaintiff also alleges that AUG[10] sold the St. Augustine Property to NFSB on December 20, 2011.  (A. 1971, ¶ 188.)  These two allegations cannot both be true.

---

[10] Plaintiff refers to a prior AUG chapter 11 case (the õAUG Bankruptcyö) that was dismissed, upon a motion by EWE,  however, Plaintiff points to nothing related to that bankruptcy case that had an effect on the ownership of the St. Augustine Property.  (A. 1970-71, ¶¶ 185-87.)

Also, in the FAC, Plaintiff alleges that the Delaware Fund transferred the Kings Hotel Mortgage to Gerova as part of the Gerova Transfer and then it was transferred to NFH on May 26, 2010, pursuant to an operating agreement.  (A. 1989, ¶¶ 269-70.)  However, pursuant to the assignment dated June 23, 2010, and recorded on June 29, 2010, the Delaware Fund transferred the Kings Hotel Mortgage to NFH.  (A. 2255; Decision, p. 69.)  Again, Plaintiff's allegations are inconsistent.

As discussed in the Daniels/McDonalds Brief, the FAC fails to allege any facts that show that the Delaware Fund was stripped of its assets (which include its ownership of the Kings Hotel Loan and the Kings Hotel Mortgage, and its interest in AUG, which owned the St. Augustine Property).  At the time Paradigm made its loans, the Delaware Fund's assignee or its subsidiary was the owner of the collateral, in which Paradigm received a security interest.  Therefore, Plaintiff cannot use the so-called Gerova Transfer to confer standing on itself to attack the loans made by Paradigm.

POINT IV

## PLAINTIFF HAS NO CLAIM AGAINST PARADIGM FOR TRANSFERS TO IT AS A SUBSEQUENT TRANSFEREE

Even if the Plaintiff did have standing to attack transfers to Paradigm (which it did not, as discussed above and set forth in the Decision), it also failed to plead a fraudulent transfer claim as against Paradigm.

First, Plaintiff fails to allege the specific transfers to Paradigm it seeks to avoid as fraudulent transfers.  As the Lower Court ruled, Paradigm was not a transferee of any of the Funds' property.  Plaintiff did not allege that Paradigm foreclosed on the Kings Hotel Loan or the St. Augustine Property (which would have given Paradigm ownership of the collateral) – it had only a lien on each, for a short period of time, while its loans were outstanding.  (A. 2256-57; Decision, pp. 70-71.)  To the extent the transfers to Paradigm of security interests in collateral were the transfers Plaintiff seeks to avoid, those transfers were returned to the original transferors and Plaintiff has not alleged that they were not – *i.e.,* when Paradigm was repaid, it released its security interest on the collateral.  Plaintiff has not explained how Paradigm making a loan and being repaid constitutes a fraudulent transfer.  The bottom line is that Paradigm is not a subsequent transferee of any property.  It held only a temporary lien on collateral that never resulted in it being the transferee of that collateral.

Second, many of the "red flags" referred to by Plaintiff in the FAC relate to conduct that took place *after* Paradigm made the loans.  For example, Plaintiff makes allegations concerning:  (a) the articles discussing Gerova and Stillwater that were published in 2011 (A. 1954-56, ¶¶ 132-36), (b) the Dalrymple report that came out on January 10, 2011 (A. 1956-57, ¶¶ 137-38), (c) the class action lawsuits, the earliest of which was commenced in March 2011 (A. 1957-59, ¶¶ 139-45), and (d) the Net Five injunction that was issued on July 12, 2012 (A. 1959, ¶ 146).  But Paradigm made the First Paradigm Loan on August 5, 2010, well before *any* of these events.  Paradigm could not have known of these alleged "red flags."

Lastly, to sustain its pleading burden, Plaintiff was required to plead at least some facts sufficient to show Paradigm acted without "good faith" with respect to the transfers.  *See, e.g., S.I.P.C. v. Bernard L. Madoff Inv. Sec. LLC*, 516 B.R. 18, 24 (S.D.N.Y. 2014) (this Court ruled that a defendant may succeed on a motion to dismiss by showing that the complaint does not plausibly allege that that defendant did not act in good faith).  In *Madoff,* this Court noted that the plaintiff had "extensive discovery powers" under Rule 2004 of the Bankruptcy Rules "through which he may gather information before he ever files a complaint," and stated that "[i]t is thus not unreasonable to require that the [plaintiff] provide a plausible basis to claim that a defendant lacked good faith in his initial complaint."  516 B.R. at

18

24, n.5.  Here, Plaintiff did not plausibly allege that Paradigm lacked good faith.

For example, Paradigm made loans to NFSB and NFKH for a total of $6 million

dollars, taking the risk of a default and that its security would not cover the

amounts due.  However, Plaintiff makes conclusory statements only as to

Paradigm's alleged lack of good faith – that these loans somehow helped a scheme

that Paradigm should have known about because of "red flags."  That is not

plausible.

POINT V

PLAINTIFF'S COMMON LAW CLAIMS FOR CONSPIRACY AND
AIDING AND ABETTING FAIL AS AGAINST PARADIGM

Plaintiff asserts claims against Paradigm for (a) conspiracy to defraud and

convert property, (b) aiding and abetting conversion, and (c) aiding and abetting

breach of fiduciary duty.  The Lower Court correctly dismissed these conspiracy

and aiding and abetting claims.

A.      Plaintiff Fails to Allege Actual Knowledge

Conspiracy and aiding and abetting claims require that the defendant had

*actual* knowledge of the underlying tort.  *See, e.g., Pension Comm. of the Univ. of*

*Montreal Pension Plan v. Banc of Am. Sec., LLC,* 652 F. Supp. 2d 495, 502

(S.D.N.Y. 2009) ("[u]nder New York law, a defendant must be shown to possess

actual knowledge of the underlying fraud"); *Chemtex, LLC v. St. Anthony Enters.,*

*Inc.*, 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007) ("New York courts, however, have uniformly required that a defendant have actual knowledge of the alleged fraud to sustain a claim for aiding and abetting"); *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004), *aff'd*, 156 F. App'x 413 (2d Cir. 2005) ("the complaint must allege facts which show that the defendant had actual knowledge of the underlying fraud"); *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986) (conspiracy requires knowledge and "intentional participation in the furtherance of the plan or purpose"); *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996) (actual knowledge is required for aiding and abetting breach of fiduciary duty); *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 253 (S.D.N.Y. 2005) (actual knowledge required for aiding and abetting and conspiracy claims).

Allegations of constructive knowledge, recklessness, or willful blindness as to whether the primary actor is engaged in fraud are not sufficient to satisfy the knowledge element of these claims. *See, e.g., Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 202, n.279 (S.D.N.Y. 2006) ("the overwhelming weight of authority holds that actual knowledge is required, rather than a lower standard such as recklessness or willful blindness"); *Chemtex,* 490 F. Supp. 2d at 546 (allegations of constructive knowledge are not enough); *Rosner v. Bank of China*, 2008 WL 5416380, at *7 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009) ("willful

blindnessö does not satisfy the knowledge requirement); *Kolbeck*, 939 F. Supp. at 246 ("New York common law, which controls the analysis here, has not adopted a constructive knowledge standard for imposing aiding and abetting liabilityö").

As the Lower Court determined, Plaintiff fails to allege plausibly that Paradigm had actual knowledge and the dismissal of the common law claims should be affirmed.

B.    The So-Called Red Flags

In an attempt to revive its claims, Plaintiff focuses in the FAC and the Appellate Brief on what it calls "red flagsö – information that Paradigm should have known and led it to discover the alleged fraud – to show that it has met its pleading requirement with respect to the element of knowledge.  However, the nature of a "red flagö is linked to the determination as to whether there is constructive knowledge, *not* actual knowledge.  In *Rosner* (relied on by the Lower Court), the Second Circuit held that statements alleging that a defendant "should have known,ö along with "conclusory statementsö that the defendant "actually knewö are insufficient.  *See Rosner*, 349 F. App'x. at 639.  This is exactly what Plaintiff does in the FAC.  For example, Plaintiff alleges in the FAC that (a) the lenders "did not perform adequate due diligenceö (A. 1966, ¶ 160), (b) the lenders "turned a blind eye to what they found, forging ahead with liens, despite information that should have at the very least prompted further inquiryö (A. 1966,

¶ 161), (c) "this should have raised another red flag for Paradigm's principals as to why Gerova was providing a guaranty to Paradigm" (A. 1991, ¶ 276), (d) "there were irregularities in the conduct of Gerova which, had Paradigm done due diligence, would or should have put it on notice of the [s]cheme" (A. 1991, ¶ 277), and (e) facts "should have led Paradigm to question ASSAC's role and why still further layers of entities were interposed in documenting Paradigm's loan" (A. 1992, ¶ 280).   The Appellant Brief carries on this constructive knowledge argument.  For example, Plaintiff states that "[the lender] failed to do due diligence, or if they did any, turned a blind eye to its findings."  (Appellant Brief, p. 43.)  However, at no point does Plaintiff allege plausibly that Paradigm had actual knowledge.[11]

Moreover, as concluded by the Lower Court, these allegations are not sufficient to support even an allegation of constructive knowledge.  (A. 2272-73, 2275, 2279; Decision, pp. 86-87, 89, 93.)  The Lower Court broke down the allegations in the FAC into three groups – those related to Gerova, those that relate to the First Paradigm Loan, and those that relate to the Second Paradigm Loan. The Lower Court analyzed each of the allegations, showing how the allegations

---

[11] Plaintiff argues in the Appellant Brief that circumstantial evidence is enough to show knowledge.  (Appellant Brief, p. 42.)  However, Plaintiff still fails to show that any circumstantial evidence demonstrates actual knowledge.  Moreover, none of the allegations referred to by Plaintiff related to circumstantial evidence address Paradigm's alleged actual knowledge.  (Appellant Brief, p. 42-44.)

fail to rise to the level of neither actual knowledge nor constructive knowledge.

(A. 2270-79; Decision, pp. 84-93.)  For example, the allegations with respect to

Gerova do not suggest that Paradigm had any knowledge with respect to NFH's

conduct.  Plaintiff also focuses on some of the underlying loan documents – *e.g.,*

that it was suspicious that Gerova guaranteed the First Paradigm Loan (A. 1991, ¶

275) – but Plaintiff fails to allege how any of the transaction documents show any

implication of fraud.  Plaintiff continues to rely on allegations that "this should

have raised another red flag."  (A. 1991, ¶ 276.)  The Lower Court ruled that such

conclusions were not enough to sustain a claim.  For these reasons, the same result

is warranted here.[12]

Further, as discussed in Point IV above, many of Plaintiff's allegations could

not have been known by Paradigm at the time it made the loans (especially, with

respect to the First Paradigm Loan).  Each of Plaintiff's allegations with respect to

the articles discussing Gerova and Stillwater, the Dalrymple report, the class action

lawsuits, and the injunction, all took place after the closing of the First Paradigm

Loan.  (A. 1954-59, ¶¶ 132-46.)

---

[12] Plaintiff contends that the Lower Court "incorrectly concluded that nothing
shows that the AUG Bankruptcy was dismissed because of fraud."  (Appellant
Brief, p. 43.)  However, in response, Plaintiff claims that "it was dismissed because
it was brought in bad faith and as an effort to evade AUG's lender, which amounts
to fraud."  (Appellant Brief, p. 43.)  Plaintiff offers no legal or factual support for
this conclusory statement.  This is another example of Plaintiff's allegations failing
to rise to even the level of constructive knowledge.

C.     <u>Allegations as to the Scheme</u>

Realizing that it has no allegations in the FAC as to Paradigm's involvement in the alleged scheme, Plaintiff argues that Paradigm's loans supported the alleged scheme.  (Appellant Brief, p. 42.)  This statement is conclusory and should be ignored.  Further, Plaintiff does not explain how Paradigm's loans actually aided the scheme.  For example, Plaintiff states that Paradigm "enabled Net Five and Rohan to borrow against equity in the Funds' Real Property Interests."  (Appellant Brief, p. 42.)  First, this statement is untrue.  The First Paradigm Loan was secured by an interest in the Kings Hotel Loan, not the Kings Hotel Property, and the Second Paradigm Loan was used by NFSB to purchase the St. Augustine Property from AUG, a subsidiary of the Delaware Fund.  Neither loan permitted a Net Five entity to borrow against equity in the real property.  Second, Plaintiff focuses on what the Paradigm loan proceeds were used to pay, however the use of the proceeds is irrelevant to the analysis of whether Paradigm had knowledge of a scheme.

Nowhere in the FAC does Plaintiff describe how Paradigm loans, which were repaid, had any relevance to the alleged scheme.  Conclusory statements that certain lenders "played an integral role in furthering the fraudulent [scheme]" is not enough when there are no allegations to support such a statement.  Plaintiff tried to convince the Lower Court that all hard money lenders are suspect where

24

the borrower is unable to "obtain financing from traditional banks and lending sources." (A. 1964, ¶ 154.)  These are nothing more than naked assertions, devoid of further factual enhancement.  *See Iqbal*, 556 U.S. at 663.  In sum, not only has Plaintiff fails to allege that Paradigm had any intentional participation in the scheme, it fails to even allege plausibly how Paradigm's loans supported the scheme.

D.   <u>Allegations as to Gerova, Not a Net Five Entity</u>

Even if Paradigm had knowledge of the Gerova "red flags," Plaintiff fails to allege that Paradigm could have known about the alleged involvement of NFH, NFKH, NFSB, or any of the alleged affiliated Net Five entities' (collectively, "Net Five").  Many, if not all, of the allegations in the FAC that relate to Paradigm refer to Paradigm's knowledge regarding Gerova and Gerova's involvement in the fraud, but make no mention of *any* Net Five entity.  For example, the following allegations involve *only* Gerova:  (a) Gerova failing to file financials (A. 1954, ¶ 129), (b) the delisting of Gerova (A. 1954, ¶ 130), (c) the resignation of Gerova's new CEO and Chairman (A. 1954, ¶ 131), (d) the articles regarding Gerova (A. 1954-56, ¶¶ 132-36), (e) the Dalrymple report about Gerova (A. 1956-57, ¶¶ 137-38), and (f) the class actions lawsuits against Gerova (A. 1957-59, ¶¶ 139-45).  There is no mention of any Net Five entity with respect to any of these alleged "red flags."  Plaintiff's only allegation as to a Net Five entity is with respect to the

25

injunction order entered on July 12, 2012, which was entered *after* Paradigm made both of the loans.  (A. 1959, ¶¶ 146-47.)

E.     Plaintiff's Case Law is Distinguishable

Plaintiff relies on case law involving parties making loans to wrongdoers, *but also* having other significant involvement in the wrongdoers' scheme, as authority for a lender's liability in such scheme.  These cases are distinguishable.

Plaintiff relies incorrectly on *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447 (S.D.N.Y. 2009).  In *Kottler*, the plaintiff alleged that the defendants knew of the fraud and (a) "intentionally took overt acts in furtherance of [the wrongdoer's fraud] to sell faulty BLIPS tax schemes," (b) "created false paper trails to minimize any appearance of involvement in the tax shelters," and (c) "was the developer of the BLIPS tax strategy."  607 F. Supp. 2d at 464-65.  Similarly, in *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 35 (Bankr. E.D.N.Y. 2006), the defendants participated directly in the scheme and there was no question that the defendants had actual knowledge of the scheme.  For example, in *Monahan*, the complaint alleged "that [defendant] Ford, through its representatives . . . , and [defendant] FMCC, through its representative . . . , attended the meeting held in early 2001 where the scheme to defraud the debtor was hatched."  *Monahan*, 340 B.R. at 33. Here, Plaintiff alleges only that Paradigm made loans and that it should have

known of the alleged scheme because of "red flags."  There is nothing here similar to the *Kottler* and *Monahan* cases.

Plaintiff also relies on *Minpeco, S.A. v. ContiCommodity Servs., Inc.*, 552 F. Supp. 327 (S.D.N.Y. 1982).  In *Minpeco*, the plaintiff claimed the defendants conspired to monopolize the silver market and to artificially boost the price of silver, causing the plaintiff to lose over $80 million from its short position in silver futures.  The defendant *brokers*, who "lent money to the other defendants and provided them with trading assistance," moved to dismiss the conspiracy claims against them.  *See Minpeco*, 552 F. Supp. at 330.  In that case, the court denied the motion to dismiss because the plaintiff alleged *intent* to further the conspiracy.  *See id.* at 331.  But, in *Minpeco*, the defendants did more than just lend money to the wrongdoers, they were brokers who also provided trading assistance in a scheme that involved the manipulation of the price of silver that was traded on an exchange.  *See id.* at 330.  Here, Paradigm had no such involvement.  Plaintiff has not alleged that Paradigm advised any wrongdoers with respect to the alleged fraud, nor has it alleged any intent on behalf of Paradigm.  As the court stated in *Minpeco,* intent is required and the "act of lending money to a conspirator does not cause one to be a co-conspirator."  *Id.* at 330.  Since Plaintiff fails to allege any involvement by Paradigm, other than as a lender, the FAC was correctly dismissed by the Lower Court.

27

F.      Plaintiff's Claims are Barred by the Doctrine of *In Pari Delicto*

As the Lower Court dismissed all of the common law claims, it did not rule on whether the doctrine of *in pari delicto* applies here.  To the extent there are any common law claims, the claims are barred by the doctrine of *in pari delicto*.

Plaintiff's entire argument in this proceeding is that the Funds were looted by Gerova and its principals through the so-called Gerova Transfer (where all of the Funds' assets were transferred to Gerova).  (Appellant Brief, p. 1.)  Plaintiff then contends that after the Funds were left empty shells, Gerova transferred those assets to Net Five to keep the assets away from the Funds' creditors.  In sum, this entire case is about the fraudulent conduct by Gerova and its principals and, to a lesser extent, the Funds and Net Five.

Plaintiff's common law claims for conspiracy to defraud and convert, aiding and abetting conversion, and aiding and abetting breach of fiduciary duty were assigned to it by those same wrongdoers.  The doctrine of *in pari delicto* bars these common law claims as it denies any such relief to the wrongdoers (here, Gerova, the Funds, and Net Five).  *See, e.g., MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*, 57 F. Supp. 3d 206, 209 (S.D.N.Y. 2014) (doctrine of *in pari delicto* "serves to deter illegality by denying relief to a wrongdoer and to avoid forcing courts to intercede in disputes between two wrongdoers"); *Kirschner*

*v. KPMG LLP*, 15 N.Y.3d 446, 464 (2010) ("doctrine of *in pari delicto* mandates

that the courts will not intercede to resolve a dispute between two wrongdoers").

Here, Plaintiff, as the assignee of Gerova and the Funds' claims (A. 1927-

38, ¶¶ 21-22), is a participant in the alleged unlawful activity that forms the basis

of this adversary proceeding.  Further, the doctrine of *in pari delicto* should apply,

even at the pleading stage of this case.  *See, e.g., Picard v. JPMorgan Chase & Co.

(In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 65 (2d Cir. 2013) (analyzing

*in pari delicto* and stating that "[e]arly resolution is appropriate where . . . the

outcome is plain on the face of the pleadings").  Lastly, the doctrine applies to

trustees or others that stand in the shoes of others (*i.e.,* Plaintiff).  *See, e.g., Picard*,

721 F.3d at 64 ("Picard [the trustee] stands in the shoes of BLMIS and may not

assert claims against third parties for participating in a fraud that BLMIS

orchestrated").

G.     Plaintiff has no Standing to Assert Common Law Claims

Since Plaintiff's fraudulent transfer claims against Paradigm must be

dismissed under Section 544 (as discussed in Point I and Point II above), Plaintiff

does not have standing to assert only state common law claims against Paradigm

because the Bankruptcy Court has no jurisdiction over those claims.  In other

words, without claims under Section 544, all that remains are state law claims of a non-debtor against another non-debtor.

These remaining claims are not proper in the Bankruptcy Court as it does not have jurisdiction over the adversary proceeding absent Section 544 claims. *See, e.g., In re Residential Capital, LLC,* 527 B.R. 865, 871 (S.D.N.Y. 2014) (noting the different tests used by courts, but using the "close nexus" test that analyzes whether the action has "a close nexus to the bankruptcy plan or proceeding" for the court to exercise jurisdiction). Here, besides the Debtor's creditors potentially receiving a portion of any litigation proceeds, the action against Paradigm has no effect on the bankruptcy case. *See, e.g., General Media,* 335 B.R. at 75-77 (bankruptcy court cannot hear a post-confirmation dispute simply because it might conceivably increase the recovery to creditors, because the rationale could "endlessly stretch a bankruptcy court's jurisdiction"; the turnover claim "is the most jurisdictionally far-fetched . . . as the [property at issue] was never property of [the debtor] or [the debtor's] estate . . . [i]nstead, the plaintiff acquired its rights, by assignment") (citations omitted). It is not the Debtor's claims or property being prosecuted against Paradigm, it is alleged assets of non-debtor third parties. These claims should be dismissed.

POINT VI

PLAINTIFF'S UNJUST ENRICHMENT AND
<u>CONSTRUCTIVE TRUST CLAIMS FAIL</u>[13]

A.     <u>Unjust Enrichment</u>

To state a claim for unjust enrichment the plaintiff must show that, among

other things, that the defendant was enriched.  *See Mandarin Trading Ltd. v.*

*Wildenstein*, 16 N.Y.3d 173, 182 (2011).  Plaintiff states that each defendant

"received the benefit of Real Property Interests that were stolen from the Funds,

but paid the Funds nothing."  (Appellant Brief, p. 48.)  As against Paradigm,

however, Plaintiff allegation is simply illogical.  Paradigm made two loans.  It was

*repaid* on those loans.  Plaintiff fails to allege how Paradigm was enriched, let

alone how any enrichment was unjust.

For this reason and the other reasons set forth in the Decision, Plaintiff's

unjust enrichment claim fails.

B.     <u>Constructive Trust</u>

Plaintiff argues that constructive trust applies because the defendants

committed fraud.  (Appellant Brief, p. 49.)  However, the FAC does not adequately

---

[13] These claims also fail for the same reasons set forth in <u>Point V.F</u> and <u>Point V.G</u>
above.

allege any fraud against Paradigm.  Plaintiff's unfounded statement that Paradigm "benefitted from and helped further the Scheme" (Appellant Brief, p. 49) has no support whatsoever.  Paradigm made secured loans to NFKH and NFSB, the loans were repaid, and the security released.  The issue ends there.[14]

<u>CONCLUSION</u>

For the foregoing reasons, the Order and Judgment should be affirmed.

Dated:  February 17, 2017

Respectfully submitted,

McLAUGHLIN & STERN, LLP

By: ____/s/ Brian J. Grieco_____
         Brian J. Grieco
1010 Northern Boulevard, Suite 400
Great Neck, New York  11021
 (516) 829-6900

*Attorneys for Paradigm Credit Corp.*

---

[14] Plaintiff's accounting claim against Paradigm was dismissed.  (A. 2289; Decision, p. 103.)  Plaintiff does not include this claim in its appeal.

32

## CERTIFICATE PURSUANT TO RULE 8015 OF THE
## FEDERAL RULES OF BANKRUPTCY PROCEDURE

The foregoing brief complies with the type-volume limitations of Rule

8015(a)(7)(B) of the Federal Rules of Bankruptcy Procedure because it contains

6,737 words, excluding the part of the brief exempted by Rule 8015.


    /s/ Brian J. Grieco

CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, defendant

appellee Paradigm Credit Corp., by and through its undersigned counsel, states that

no company owns 10% or more in Paradigm Credit Corp.

McLAUGHLIN & STERN, LLP

By: ___/s/ Brian J. Grieco_____
     Brian J. Grieco

*Attorneys for Paradigm Credit Corp.*